JEFFREY P. FUCHSMAN, SBN 105651
BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 Ventura Boulevard, Eighteenth Floor
Encino, California 91436
Telephone:   (818) 508-3700
Facsimile:   (818) 506-4827

Attorneys for Defendants
MERRITT HOSPITALITY, LLC and
HEI HOSPITALITY, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICA ESPARZA GONZALEZ, on behalf of herself and all others similarly situated and the general public,<br><br>Plaintiff,<br><br>vs.<br><br>MERRITT HOSPITALITY, LLC. a Delaware Limited Liability Company; HEI HOSPITALITY, LLC; and DOES1 through 50 inclusive,<br><br>Defendants. | Case No. **'22 CV 0328 BTM KSC**<br><br>**CLASS ACTION**<br><br>**NOTICE OF REMOVAL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF MELANIE EW COLLIER AND JEAN SCHMIER**<br><br>[San Diego County Superior Court Case No. 37-2022-00004806-CU-OE-CTL]<br><br>Trial Date:        None Set |

Defendants MERRITT HOSPITALITY, LLC and HEI HOSPITALITY, LLC ("Defendants") state as follows:

1.        On February 7, 2022, Plaintiff MONICA ESPARZA GONZALEZ ("Plaintiff") filed her Complaint in the above-entitled civil action in the Superior Court for the State of California, County of San Diego, Case No. 37-2022-00004806-CU-OE-CTL, which is presently pending against Defendants ("Superior Court Action").

/ / /

/ / /

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

2.      Defendants were served with the Superior Court Action on February 9, 2022. True and correct copies of the Summons and Complaint and Proof of Service are attached hereto as **Exhibit A**.

3.      On March 7, 2022, Defendants filed their Answer to the Complaint in the Superior Court Action.  A true and correct copy of Defendants' Answer filed in the Superior Court Action is attached hereto as **Exhibit B**.

4.      Defendants are informed and believe and thereon allege that none of the purported Doe Defendants have been served with the Summons and Complaint.

5.      The Summons and Complaint and Proof of Service filed by Plaintiff (**Exhibit A**), the Answer filed by Defendants (**Exhibit B**), and the Notice of Case Assignment (**Exhibit C**) constitute all of the process, pleadings and orders that Defendants have knowledge of being filed in the Superior Court Action.

6.       Plaintiff's Superior Court Action is a civil action over which this District Court has original subject matter jurisdiction under 28 U.S.C. § 1332(d) based upon diversity of citizenship and an aggregate amount in controversy in excess of $5,000,000, exclusive of interest and costs. The Superior Court Action may be removed to this District Court pursuant to 28 U.S.C. § 1453(b), the Class Action Fairness Act ("CAFA") for the following reasons:

a.      Plaintiff's Superior Court Action is brought as a class action on behalf of all hourly employees of Defendants working in California during the period beginning February 7, 2018. (Complaint, ¶¶ 1, 24.) As such, the Superior Court Action is a "class action" within the meaning of 28 U.S.C. § 1332(d)(1)(B), and may be removed to this District Court pursuant to CAFA.

b.      When this action was commenced, and at all times since, Defendant Merritt Hospitality, LLC was, and continues to be, a Delaware limited liability company with its principal place of business in Norwalk, Connecticut. Norwalk, Connecticut is where Defendant Merritt

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

Hospitality, LLC's headquarters are located, its officers direct, control and coordinate its activities, where its administrative functions are carried out, where its senior leadership is located, and where its corporate records are maintained. (Collier Decl., ¶¶ 2, 3; see also Complaint, ¶¶ 5, 8.) Thus, Defendant Merritt Hospitality, LLC is a citizen of the States of Delaware and Connecticut under 28 U.S.C. § 1332(c)(1), and is not a citizen of the State of California.

c.  When this action was commenced, and at all times since, Defendant HEI Hospitality, LLC was, and continues to be, a Delaware limited liability company, with its principal place of business in Norwalk, Connecticut. Norwalk, Connecticut is where Defendant HEI Hospitality, LLC's headquarters are located, its officers direct, control and coordinate its activities, where its administrative functions are carried out, where its senior leadership is located, and where its corporate records are maintained. (Collier Decl., ¶¶ 2, 3; see also Complaint, ¶¶ 5, 9.) Thus, Defendant HEI Hospitality, LLC is a citizen of the States of Delaware and Connecticut under 28 U.S.C. § 1332(c)(1), and is not a citizen of the State of California.

d.  Defendants are informed and believe and thereon allege that when this action was commenced, and at all times since, Plaintiff was, and continues to be, a citizen of the State of California. (Complaint, ¶¶ 1, 7.)

e.  Although unidentified fictitious "Doe" Defendants are alleged in Plaintiff's Complaint, 28 U.S.C. § 1441(b)(1) provides, in pertinent part, that "[i]n determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of Defendants sued under fictitious names shall be disregarded."

/ / /

/ / /

1799895.1

3

f. Because Plaintiff is a citizen of California, and Defendants are citizens of Delaware and Connecticut, diversity exists between Plaintiff and Defendants in this action pursuant to 28 U.S.C. § 1332(d)(2).

g. Plaintiff's Superior Court Action purports to sue on behalf of all non-exempt employees of Defendants working in California during the period beginning February 7, 2018. (Complaint, ¶¶ 1, 24.)  During the relevant class period alleged in the Superior Court Action, Defendant Merritt Hospitality, LLC has employed 3,074 non-exempt employees working at 13 hotels and one restaurant in California. (Schmier Decl., ¶ 2.)

h. For purposes of diversity jurisdiction under 28 U.S.C. § 1332(d)(6), the aggregate amount in controversy in this action, exclusive of interest and costs, exceeds the sum of $5,000,000. For purposes of determining if the amount in controversy exceeds $5,000,000, the notice of removal must only allege a "plausible" basis for federal court jurisdiction based on the allegations in the Complaint, and need not be based on evidentiary submissions. *Arias v. Residence Inn*, 936 F.3d 920, 922 (9th Cir. 2019). A defendant's allegations showing the amount in controversy may rely on reasonable assumptions. *Id.*   An assumption is reasonable if it is founded on the allegations in the Complaint. *Id*. at 925. A defendant's assumptions need not be proven but must only be based on reasonable grounds. *Id*. at 927. The amount in controversy is "'an estimate of the total amount in dispute, not a prospective assessment of defendant's liability.'" *Id*.

i. The Complaint seeks to recover unpaid overtime, missed meal and rest break premiums, unreimbursed expenses, waiting time penalties, wage statement penalties, and attorney's fees on behalf of a class of 3,074 non-exempt employees employed by Defendants in California during the

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

period beginning February 7, 2018. (Complaint, ¶¶ 1, 24.) Defendants anticipate in good faith that the total aggregate damages that are claimed by Plaintiff exceeds the sum of $5,000,000 exclusive of interest and costs for the following reasons:

(1)   Plaintiff alleges: "At all relevant times herein, Defendant has <u>consistently</u> maintained and enforced against Plaintiff Class the following unlawful practices and policies: a) willfully failing to provide Plaintiff and Plaintiff Class with compliant meal and rest break periods or premium pay in lieu thereof; b) willfully refusing to pay Plaintiff and Plaintiff Class for all hours worked, including minimum wage and overtime; c) failing to provide Plaintiff and Plaintiff Class with reimbursement for necessary expenditures in the discharge of their duties; d) willfully refusing to compensate Plaintiff and members of the Plaintiff Class wages due and owing at the time Plaintiff's and Plaintiff Class's employment with Defendant ended; e) willfully refusing to furnish Plaintiff and Plaintiff Class accurate itemized wage statements upon payment of wages." (Complaint, ¶ 3; emphasis added.)

(2)   Plaintiff seeks to recover one hour of premium pay for every shift that an employee was not provided with a compliant meal or rest period. (Complaint, ¶¶ 35, 37, 40, 42.) During the class period, Class Members worked 194,574 work weeks. The average hourly rate of pay during the class period is $17.19. (Schmier Decl., ¶ 2.) Based on Plaintiff's allegations that Defendants had a "<u>consistent</u>" policy not to provide employees with compliant meal and rest periods, it is reasonable to assume one missed meal break premium and one missed rest break premium per week, or two hours of missed break premiums total. See *Arias, supra*, 936 F.3d

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

at 926-927 (reasonable to assume one missed rest break and one missed meal break per week based on plaintiff's allegations that defendant "routinely" failed to pay employees missed break premiums). If Plaintiff can establish two hours of pay per week at $17.19/hour, the potential amount in controversy for meal and rest breaks totals <u>$6,689,454.12.</u> ($17.19 x 2 hours x 194,574 work weeks = $6,689,454.12.) Even if it is assumed that only one meal period and one rest period violation occurred every two weeks, the potential amount in controversy for meal and rest breaks totals <u>$3,344,727.06</u>.

(3)     Plaintiff seeks to recover minimum wages and overtime based on Defendants' alleged failure to pay employees for all hours worked, include incentive pay in employees' overtime rate, and an alleged unlawful timeclock rounding policy. (Complaint, ¶¶ 53-56.) Based on Plaintiff's allegation that Defendants had a "<u>consistent</u>" policy not to pay employees minimum wage and overtime, it is reasonable to assume 30 minutes of additional minimum wages and 30 minutes of additional overtime per week. See *Arias, supra*, 936 F.3d at 926-927 (reasonable to assume 30 minutes of overtime per week based on plaintiff's allegation that defendant "routinely" failed to pay employees overtime.) If Plaintiff can establish 30 minutes of additional minimum wages per week at $13/hour, the total potential amount in controversy for minimum wage totals <u>$1,264,731</u>. ($13 x .5 hour x 194,574 weeks = $1,264,731)[1] In addition, Plaintiff seeks liquidated (<u>i.e.</u>, double damages) for

---

[1] The minimum wage was $11 in 2018; $12 in 2019; $13 in 2020; $14 in 2021; and $15 in 2022. The average minimum wage during the class period is $13.

Defendants' alleged minimum wage violations. (Complaint, ¶ 57.) Thus, the potential amount in controversy for minimum wage including liquidated damages totals $2,529,462. ($1,264,731 x 2 = $2,529,462.) Even if it is assumed that only 30 minutes of unpaid minimum wage occurred every two weeks, the potential amount in controversy for minimum wage and liquidated damages totals $1,264,731. If Plaintiff can establish 30 minutes of additional overtime per week at $25.79/hour, the total potential amount in controversy for overtime totals $2,509,031.73. ($25.79 x .5 hour x 194,574 weeks = $2,509,031.73.)[2]  Even if it is assumed that only 30 minutes of unpaid overtime occurred every two weeks, the potential amount in controversy for overtime totals $1,254,515.86.

(4)    Plaintiff seeks to recover damages for Defendants' alleged failure to reimburse employees for the business use of their personal cell phone and other expenses. (Complaint, ¶ 63.) Based on Plaintiff's allegation that Defendants had a "consistent" policy not to reimburse employees for business expenses including personal cell phones for work, it reasonable to assume employees are entitled to $1.00/week for expense reimbursement. If Plaintiff can establish $1.00 per week, the total potential amount in controversy for expense reimbursement is $194,574. ($1.00 x 194,574 weeks = $194,574.)

/ / /
/ / /
/ / /
/ / /

---

[2] The overtime rate of $25.79 is 1.5 x the average hourly rate of $17.19.

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

(5)   Plaintiff seeks to recover penalties of $50 for the initial pay period, and $100 for subsequent pay periods under Labor Code section 226 based on Defendants' alleged failure to provide employees with accurate wage statements. (Complaint, ¶ 66.) The wage statement subclass includes all employees who worked during the period beginning February 7, 2021.  There were 1,286 non-exempt employees employed in California who worked 15,315 pay periods during the period beginning February 7, 2021. (Schmier Decl., ¶ 2.) Based on Plaintiff's allegation that Defendants "consistently" failed to provide employees with accurate wage statements, the total potential amount in controversy on the wage statement claim is $1,467,200. (1286 pay periods x $50 + 14,029 pay periods x $100 = $1,467,200.)[3]

(6)   Plaintiff seeks to recover waiting time penalties under Labor Code section 203 equal to 30 days of wages for former employees who terminated during the period beginning February 7, 2019, and who allegedly were not paid all wages owed at termination. (Complaint, ¶¶ 24(b), 73.) There are 1,556 former non-exempt employees in California who terminated on or after February 7, 2019. (Schmier Decl., ¶ 2.) Based on Plaintiff's allegation that Defendants "consistently" failed to pay former employees wages owed at termination and therefore are entitled to 30 days of wages as waiting time penalties, the total potential amount in controversy on the waiting time penalty claim is $6,419,433.60. (1,556

---

[3] The "initial" penalty is determined by subtracting from the total pay periods (15,315) the total number of employees (1,286) during the period beginning February 7, 2021. The remaining pay periods (14,029) are considered "subsequent" pay periods.

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

employees x $17.19/hour x 8 hours x 30 days = $6,419,433.60.) Even if only half of the former employees are entitled to waiting time penalties, the total potential amount in controversy on the waiting time penalty claim is $3,209,716.80.

(7)   Plaintiff seeks to recover attorney's fees. (Complaint, ¶¶ 37, 42, 57, 63, 71, 87.) Attorney's fees must be included when determining the amount in controversy for removal jurisdiction. *Arias, supra*, 936 F.3d at 927-928.

(8)   Even without considering attorney's fees, a conservative estimate for the potential amount in controversy for CAFA removal purposes based on Plaintiff's allegations is between $10,735,465 and $19,809,155, and is well in excess of $5,000,000.

7.   In addition to Plaintiff's Superior Court Action, Defendants have been sued in three other class actions asserting similar wage and hour claims in the past three years: *Calzada v. Integrated Business Services, LLC, et al*., Santa Cruz Superior Court Case No. 17 CV02227; *Godinez v. Merritt Hospitality, LLC*, USDC (C.D. Cal.) Case No. 8:20-cv-00941-JWH-KESx, and *Nunez v. Merritt Hospitality, LLC*, Los Angeles Superior Court Case No. 20STCV07198.

8.   This District Court has jurisdiction over all the parties, and its territorial jurisdiction embraces the place where the Superior Court Action is pending.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

WHEREFORE, Defendants pray that the Superior Court Action be removed from the San Diego County Superior Court to this District Court.

DATED:  March 10, 2022          BALLARD ROSENBERG GOLPER & SAVITT, LLP

By:   _/s/ Jeffrey P. Fuchsman_
       JEFFREY P. FUCHSMAN
       Attorneys for Defendants
       MERRITT HOSPITALITY, LLC and
       HEI HOSPITALITY, LLC

I certify under Fed. R. Civ. P. 11 that the foregoing is true and correct to the best of my knowledge.

_/s/ Jeffrey P. Fuchsman_
       Jeffrey P. Fuchsman
       jfuchsman@brgslaw.com

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF NOTICE OF REMOVAL

### I.    INTRODUCTION

Plaintiff purports to sue on behalf of a class of all hourly employees of Defendants working in California during the period beginning February 7, 2016. (Complaint, ¶¶ 1, 24.) As such, this is a "class action" within the meaning of 28 U.S.C. § 1332(d)(1)(B), and may be removed to this District Court pursuant to CAFA.

During the relevant period alleged in the Superior Court Action, Defendant Merritt Hospitality, LLC has employed 3,074 non-exempt employees working at 13 hotels and one restaurant in California. (Schmier Decl., ¶ 2.) As established below, diversity of citizenship exists between Plaintiff and Defendants, there are more than 100 employees in the alleged class, and the amount in controversy is well in excess of $5,000,000 based on Plaintiff's allegations.

### II.    PLAINTIFF'S SUPERIOR COURT ACTION CAN BE REMOVED UNDER CAFA

Class actions can be removed to federal court under CAFA.  28 U.S.C. § 1453(b).  To satisfy the requirements for removal under CAFA, Defendants must establish the following:  (1) the class consists of at least 100 employees (28 U.S.C. § 1332(d)); (2) there is diversity of citizenship between any member of the class and any defendant (28 U.S.C. § 1332(d)(2)(B)); and (3) the aggregate amount in controversy exceeds $5,000,000 (28 U.S.C. §§ 1332(d)(2), (6)).  *Standard Fire Insurance Company v. Knowles*, 568 U.S. 588, 592 (2013); *Rodriguez v. AT&T Mobility Servs*., 728 F.3d 975, 977-978 (9th Cir. 2013).

Here, the alleged class includes 3,074 employees, so the first requirement is clearly satisfied. (Schmier Decl., ¶ 2.) As to diversity of citizenship, Plaintiff is a citizen of California. (Complaint, ¶¶ 1, 7.) The citizenship of a limited liability company for diversity purposes under CAFA is the State under whose laws it is organized and where it has its principal place of business. 28 U.S.C. § 1332(d)(10)

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

("For purposes of this subsection and section 1453, an unincorporated association shall be deemed a citizen of the State where it has its principal place of business and the State under whose laws it is organized."); *Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 704 (4th Cir. 2010) ("Moreover, the specific language of § 1332(d)(10) indicates that a limited liability company, if not a corporation, is an unincorporated association, employing 'unincorporated' as the counterpart to 'incorporated. . . Accordingly, we agree with the district court that, under § 1332(d)(10), Express Check's citizenship for purposes of CAFA is the State under whose laws it is organized and the State where it has its principal place of business."); *Jack v. Ring LLC*, 2021 WL 3510291, at *3 (N.D. Cal. 2021) ("But as noted above, judges in the Ninth and Fourth Circuits have suggested that CAFA did intend to change the traditional diversity rule for LLCs. The Court therefore finds that Defendant's citizenship is based on its principal place of business.")

Both at the commencement of this action and now, Defendants Merritt Hospitality, LLC and HEI Hospitality, LLC were both Delaware limited liability companies, with their principal place of business in Norwalk, Connecticut. (Collier Decl., ¶¶ 2, 3; see also Complaint, ¶¶ 5, 8, 9.) Thus, Defendants are citizens of the States of Delaware and Connecticut under 28 U.S.C. § 1332(c)(1), and are not citizens of the State of California.

As the U.S. Supreme Court held in *Hertz Corp. v. Friend,* 559 U.S. 77 (2010), a corporation's principal place of business for diversity purposes is where its officers direct, control and coordinate the corporation's activities. *Id.* at 92-93. As explained in *Hertz*:

"And in practice it should normally be the place where the corporation maintains its headquarters -- provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the 'nerve center,' and not simply an office where the corporation holds its board meetings (for

example, attended by directors and officers who have traveled there for the occasion)." *Id.* at 93.

In *Hertz*, respondents, California citizens, sued petitioner Hertz Corporation in a California state court for alleged state law violations. Hertz removed the case to federal court under 28 U.S.C. §§ 1332(d)(2), 1441(a) based on diversity. Respondents argued Hertz was a California citizen and diversity jurisdiction was lacking under § 1332(c)(1). To show its principal place of business was in New Jersey, not California, Hertz submitted a declaration stating it operated facilities in forty-four states, that California accounted for only a portion of its business activity, that its leadership was at its corporate headquarters in New Jersey, and that its core executive and administrative functions were primarily carried out there. *Id.* at 81-82.

The district court concluded it lacked diversity jurisdiction because Hertz was a California citizen under prior Ninth Circuit precedent. Finding that California was Hertz's principal place of business because a plurality of the relevant business activity occurred there, the district court remanded the case to state court. The Ninth Circuit affirmed. *Id.* at 82. The Supreme Court reversed. Applying the "nerve center test," the Supreme Court held the petitioner's declaration demonstrated Hertz's center of direction, control and coordination, *i.e.*, its "nerve center," was located in New Jersey, not California. *Id*. at 97.

Here, Defendants are Delaware limited liability companies. Further, Norwalk, Connecticut is where both their headquarters are located; their officers direct, control, and coordinate their activities; where their  corporate records are maintained; and where their leadership and administrative functions  are carried out. (Collier Decl., ¶ 3.) Thus, Defendants' principal place of business is Connecticut.

Although there is complete diversity of citizenship between Plaintiff and Defendants, CAFA does not require complete diversity for removal.  Rather, removal is proper if there is "minimal" diversity.  Such minimal diversity can be established if

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

1   there is diversity between any member of the class and any defendant.  28 U.S.C.

2   § 1332(d)(2)(A).[4]

3       CAFA expressly provides that "the claims of the individual class members shall

4   be aggregated to determine whether the matter in controversy exceeds the sum or

5   value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d)(6).  For

6   purposes of determining if the amount in controversy exceeds $5,000,000, the notice

7   of removal must only allege a "plausible" basis for federal court jurisdiction based on

8   the allegations in the Complaint, and need not be based on evidentiary submissions.

9   *Dart Cherokee Basin Operating Company, LLC v. Owens*, 574 U.S. 81, 89 (2014);

10  *Arias v. Residence Inn*, 936 F.3d 920, 922 (9th Cir. 2019). A defendant's allegations

11  showing the amount in controversy may rely on reasonable assumptions. *Arias, supra,*

12  936 F.3d at 922.  An assumption is reasonable if it is founded on allegations in the

13  Complaint.  *Id*. at 925. A defendant's assumptions need not be proven but must only

14  be based on reasonable grounds. *Id*. at 927. The amount in controversy is "'an estimate

15  of the total amount in dispute, not a prospective assessment of defendant's liability.'"

16  *Id*.

17      The Complaint seeks to recover unpaid overtime, missed meal and rest break

18  premiums, unreimbursed expenses, waiting time penalties, wage statement penalties,

19  and attorney's fees on behalf of a class of 3,074  non-exempt employees employed by

20  Defendants in California during the period beginning February 7, 2018. (Complaint,

21  ¶¶ 1, 24.) Defendants anticipate in good faith that the total aggregated damages that

22

23

24  _____

    [4] A district court has discretion to decline jurisdiction over the matter if more than
25  one-third of the class members and the primary defendant are citizens of the State
    where the action was filed.  28 U.S.C. § 1332(d)(3). If more than two-thirds of the
26  class members and the primary defendant are citizens of the State where the action
    was filed, the district court must decline jurisdiction. 28 U.S.C. § 1332(d)(4).  Here,
27  since Defendants are not citizens of California, neither § 1332(d)(3) nor (d)(4) applies.
28

are claimed by Plaintiff exceeds the sum of $5,000,000 exclusive of interest and costs for the following reasons.

Plaintiff alleges: "At all relevant times herein, Defendant has <u>consistently</u> maintained and enforced against Plaintiff Class the following unlawful practices and policies: a) willfully failing to provide Plaintiff and Plaintiff Class with compliant meal and rest break periods or premium pay in lieu thereof; b) willfully refusing to pay Plaintiff and Plaintiff Class for all hours worked, including minimum wage and overtime; c) failing to provide Plaintiff and Plaintiff Class with reimbursement for necessary expenditures in the discharge of their duties; d) willfully refusing to compensate Plaintiff and members of the Plaintiff Class wages due and owing at the time Plaintiff's and Plaintiff Class's employment with Defendant ended; e) willfully refusing to furnish Plaintiff and Plaintiff Class accurate itemized wage statements upon payment of wages." (Complaint, ¶ 3; emphasis added.)

Plaintiff seeks to recover one hour of premium pay for every shift that an employee was not provided with a compliant meal or rest period. (Complaint, ¶¶ 35, 37, 40, 42.) During the class period, Class Members worked 194,574 work weeks. The average hourly rate of pay during the class period is $17.19. (Schmier Decl., ¶ 2.) Based on Plaintiff's allegations that Defendants had a "<u>consistent</u>" policy not to provide employees with compliant meal and rest periods, it is reasonable to assume one missed meal break premium and one missed rest break premium per week, or two hours of missed break premiums total. See *Arias, supra*, 936 F.3d at 926-927 (reasonable to assume one missed rest break and one missed meal break per week based on plaintiff's allegations that defendant "routinely" failed to pay employees missed break premiums); *Salazar v. Pods Enterprises, Inc.*, 2019 WL 2023726, at *3 (C.D. Cal. 2019) (based on allegation that defendant "consistently" failed to provide employees with compliant meal and rest breaks, "the court concludes that reasonable, conservative assumption is one violation per week.") If Plaintiff can establish one meal break and one rest break violation per week, or two hours of pay per week at

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

$17.19/hour, the total potential amount in controversy for meal and rest breaks totals <u>$6,689,454.12.</u> ($17.19 x 2 hours x 194,574 work weeks = $6,689,454.12.)  Even if it is assumed there was only one meal break and one rest break violation every two weeks, the total potential amount in controversy for meal and rest breaks totals <u>$3,344,727.06.</u>

Plaintiff also seeks to recover minimum wages and overtime based on Defendants' alleged failure to pay employees for all hours worked, include incentive pay in employees' overtime rate, and an alleged unlawful timeclock rounding policy. (Complaint, ¶¶ 53-56.) Based on Plaintiff's allegation that Defendants had a "<u>consistent</u>" policy not to pay employees minimum wage and overtime, it is reasonable to assume 30 minutes of additional minimum wages and 30 minutes of additional overtime per week. See *Arias, supra*, 936 F.3d at 926-927 (reasonable to assume 30 minutes of overtime per week based on plaintiff's allegation that defendant "routinely" failed to pay employees overtime.); *Salazar, supra*, 2019 WL 2023726 at *4 (one hour of overtime and 30 minutes of minimum wage per week is reasonable assumption based on allegation that defendant "consistently" failed to pay employees minimum wage and overtime.) Here, Defendants suggest an even more conservative assumption of 30 minutes of overtime and 30 minutes of minimum wage per week. If Plaintiff can establish 30 minutes of additional minimum wages per week at $13/hour, the total potential amount in controversy for minimum wage totals <u>$1,264,731.</u> ($13 x .5 hour x 194,574 weeks = $1,264,731.)[5] In addition, Plaintiff seeks liquidated (<u>i.e.</u>, double damages) for Defendants' alleged minimum wage violations. (Complaint, ¶ 57.) Thus, the potential amount in controversy for minimum wage including liquidated damages totals <u>$2,529,462.</u> ($1,264,731 x 2 = $2,529,462.)  If Plaintiff can establish 30 minutes of additional overtime per week at $25.79/hour, the total

---

[5] The minimum wage was $11 in 2018; $12 in 2019; $13 in 2020; $14 in 2021; and $15 in 2022. The average minimum wage during the class period is $13.

potential amount in controversy for overtime totals $2,509,031.73. ($25.79 x .5 hour x 194,574 weeks = $2,509,031.73.)[6]  Even if the Court assumed only 30 minutes of minimum wage/liquidated damages and overtime every two weeks, the potential amount in controversy for minimum wage and liquidated damages is $1,264,731, and $1,254,515.86 for overtime.

In addition, Plaintiff seeks to recover damages for Defendants' alleged "consistent" failure to reimburse employees for the business use of their personal cell phone and other expenses. (Complaint, ¶ 3.) Thus, it is reasonable to assume employees are entitled to $1.00/week for expense reimbursement. If Plaintiff can establish $1.00 per week, the total potential amount in controversy for expense reimbursement is $194,574.  ($1.00 x 194,574 weeks = $194,574.)

Plaintiff further seeks to recover penalties under Labor Code section 226 of $50 for the initial violation and $100 for subsequent violations based on Defendants' alleged "consistent" failure to provide employees with accurate wage statements. (Complaint, ¶¶ 3, 66.) The wage statement subclass includes 1,286 employees who worked 15,315 pay periods during the period beginning February 7, 2021.  (Schmier Decl., ¶ 2.)  It is reasonable to apply $50 for the initial pay period and $100 for subsequent pay periods. *Salazar, supra*, 2019 WL 2023726 at *4-5. Thus, the potential amount in controversy on the wage statement claim is $1,467,200.  (1,286 pay periods x $50 + 14,029 pay periods x $100 = $1,467,200.)[7]

/ / /

/ / /

/ / /

---

[6] The overtime rate of $25.79 is 1.5 x the average hourly rate of $17.19.

[7] The "initial" penalty is determined by subtracting from the total pay periods (15,315) the total number of employees (1,286) during the period beginning February 7, 2021. The remaining pay periods (14,029) are considered "subsequent" pay periods.

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

Further, Plaintiff seeks to recover waiting time penalties under Labor Code section 203 equal to 30 days of wages for former employees who terminated during the period beginning February 7, 2019, and who allegedly were not paid all wages owed at termination. (Complaint, ¶¶ 3, 24(b), 73.) Based on Plaintiff's allegation that Defendants "consistently" failed to pay former employees all wages owed at termination which entitles them to 30 days of wages as waiting time penalties, it is reasonable to calculate the potential waiting time penalty exposure based on 30 days of wages for all former employees. *Salazar, supra*, 2019 WL 2023726 at *5. There are 1,556 former non-exempt employees in California who terminated on or after February 7, 2019. (Schmier Decl., ¶ 2.) Thus, the total potential amount in controversy on the waiting time penalty claim is $6,419,433.60. (1,556 employees x $17.19/hour x 8 hours x 30 days = $6,419,433.60.) Even if only half of the former employees are entitled to waiting time penalties, the total potential amount in controversy on the waiting time penalty claim is $3,209,716.80.

Lastly, Plaintiff seeks to recover attorney's fees. (Complaint, ¶¶ 37, 42, 57, 63, 71, 87.) Attorney's fees must be included when determining the amount in controversy for removal jurisdiction. *Arias, supra*, 936 F.3d at 927-928.

Without considering attorney's fees, a conservative estimate for the amount in controversy for CAFA removal purposes based on Plaintiff's allegations is between $10,735,465 and $19,809,155. Even with the most conservative assumptions, the amount in controversy is well in excess of $5,000,000 under CAFA.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**III.** <u>**CONCLUSION**</u>

For all the foregoing reasons, Defendants urge that Plaintiff's Superior Court Action be removed to this District Court.

DATED: March 10, 2022          BALLARD ROSENBERG GOLPER & SAVITT, LLP


By: *  /s/ Jeffrey P. Fuchsman*
          JEFFREY P. FUCHSMAN
          Attorneys for Defendants
          MERRITT HOSPITALITY, LLC and
          HEI HOSPITALITY, LLC

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

1799895.1

1

## DECLARATION OF MELANIE EW COLLIER

2  I, MELANIE EW COLLIER, declare as follows:

3  1. I am employed as Corporate Paralegal for Defendant Merritt Hospitality,
4 LLC. This Declaration is made in support of Defendants' Notice of Removal. If called
5 as a witness, I could and would testify competently to the following facts based on
6 my own personal knowledge.

7  2. Both at the commencement of this action and now, Defendant Merritt
8 Hospitality, LLC and HEI Hospitality, LLC were Delaware limited liability
9 companies, with their principal place of business in Norwalk, Connecticut. HEI
10 Hospitality, LLC is a member of Merritt Hospitality, LLC.

11  3. Norwalk, Connecticut is where Merritt Hospitality, LLC and HEI
12 Hospitality, LLC both have their headquarters; their officers direct, control, and
13 coordinate their activities; where their corporate records are maintained; and where
14 their leadership and administrative functions are carried out.

15  I declare under penalty of perjury under the laws of the United States of
16 America the foregoing is true and correct. Executed on March 4th, 2022, at Norwalk,
17 Connecticut.

18

19

20       MELANIE EW COLLIER, Declarant

21

22

23

24

25

26

27

28

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

1799895.1

**DECLARATION OF JEAN SCHMIER**

I, JEAN SCHMIER, declare as follows:

1.    I am employed by Defendant Merritt Hospitality, LLC as Corporate Director of Employee Relations. This Declaration is made in support of Defendants' Notice of Removal. If called as a witness, I could and would testify competently to the following facts based on my own personal knowledge.

2.    Plaintiff purports to sue on behalf of a class of all hourly employees of Defendant Merritt Hospitality LLC working in California during the period beginning February 7, 2018. Based on data maintained by Merritt Hospitality, LLC in its human resources information system in the ordinary course of business, there were 3,074 non-exempt employees working at 13 hotels and one restaurant in California during the period beginning February 7, 2018. Based on the time and pay records for these employees, there were 194,574 work weeks during the class period worked by non-exempt employees in California. Based on employee pay data, the average hourly rate of pay during the class period is $17.19. During the period beginning February 7, 2021, there were 1,286 non-exempt employees employed by Merritt Hospitality in California who worked 15,315 pay periods. There are 1,556 former non-exempt employees in California who terminated on or after February 7, 2019.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 4, 2022, at Olney, Maryland.

_____
JEAN SCHMIER, Declarant

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 Ventura Boulevard, Eighteenth Floor
Encino, California 91436

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 15760 Ventura Boulevard, Eighteenth Floor, Encino, CA 91436.

On March 10, 2022, I served true copies of the following document(s) described as **NOTICE OF REMOVAL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF MELANIE EW COLLIER AND JEAN SCHMIER** on the interested parties in this action as follows:

### SEE ATTACHED SERVICE LIST

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List.  I am "readily familiar" with Ballard Rosenberg Golper & Savitt, LLP's practice for collecting and processing correspondence for mailing with the United States Postal Service.  Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business.  Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Encino, California, on that same day following ordinary business practices.

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  By electronic mail transmission from dsalter@brgslaw.com on March 10, 2022, by transmitting a PDF format copy of such document(s) to each such person at the e-mail address listed below their address(es).   The document(s) was/were transmitted by electronic transmission and such transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 10, 2022, at Encino, California.

_____
Darla Salter

**SERVICE LIST**

Ana R. Salusky, Esq.
Salusky Law Group, APC
3738 Bayer Avenue
Suite 104
Long Beach, California 90808
Telephone:   (562) 855-0004
Facsimile:    (562) 855-0002
asalusky@saluskylaw.com

***Attorneys for Plaintiff***
***MONICA ESPARZA GONZALEZ***

BALLARD ROSENBERG GOLPER & SAVITT, LLP
15760 VENTURA BOULEVARD, EIGHTEENTH FLOOR
ENCINO, CALIFORNIA 91436